UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-61693-CIV (LENARD/GARBER)

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| JOSEPH J. MONTEROSSO, et al. | ) ) |
| Defendants. | ) ) ) |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
*IN LIMINE* FOR ADVERSE INFERENCES AGAINST
GLOBETEL COMMUNICATIONS CORP.

Pursuant to Rule 7 of the Federal Rules of Civil Procedure and Local Rule 7.1, plaintiff, the Securities and Exchange Commission (the "Commission"), respectfully submits its Memorandum of Law in Support of Motion *In Limine* For Adverse Inferences against GlobeTel Communications Corp. ("GlobeTel") based upon defendant Lawrence Lynch's ("Lynch") exercise of his Fifth Amendment privilege against self-incrimination.[1]

## BACKGROUND FACTS

On November 21, 2007, the Commission filed its complaint in S.E.C. v. Monterosso, et al., in this Court. In that complaint, the Commission alleges that, from 2004 through 2006, the Joseph J. Monterosso ("Monterosso") and Vargas engaged in a scheme to generate fictitious revenue for GlobeTel Communications Corp. ("GlobeTel") by creating false invoices that reflected "off-net" transactions between various

---

1     There is presently pending before the Court a motion seeking adverse inferences against Lynch based upon his assertion of his Fifth Amendment privilege.

telecommunication ("telecom") companies and three of GlobeTel's wholly-owned subsidiaries, Centerline, Volta and Lonestar, that never occurred. The complaint alleges the defendants' fraudulent scheme caused GlobeTel falsely to report to its investors and auditors $119 million in revenue in periodic filings, registration statements and press releases between September 2004 and August 2006. Dkt. No. 1.

On May 2, 2008, the Commission filed a complaint against defendants GlobeTel, Timothy J. Huff ("Huff"), Thomas Y. Jimenez ("Jimenez"), and Lawrence E. Lynch ("Lynch") ("May 2008 Complaint"). Dkt. No. 63. This Complaint repeats the allegations in the November 2007 Complaint concerning the 2004-2006 fraudulent scheme to generate fictitious revenue for GlobeTel and alleges Jimenez's and Lynch's role in the scheme. Lynch had served as GlobeTel's chief operating officer ("COO") from August 16, 2004, to about March 2006 and the corporation's chief financial officer ("CFO") from March to October 2006. Exh. A at 3, B at 5. He became involved in GlobeTel's accounting for the telecommunications business in 2005 because he was in charge of Centerline, and controller Jesus Quintero reported to Lynch with respect to Centerline. Exh. C at 211:12-212:9.

The May 2008 Complaint alleges Lynch made or caused to be made accounting entries that recorded revenue even while he was aware the "off-net" invoices did not represent actual telecom business and that hid the fact GlobeTel was neither paying its vendors nor being paid by customers. Dkt. No. 63 at ¶¶ 47-83. In addition, the complaint alleges that, on April 27, 2005, "a GlobeTel executive" asked defendant Monterosso for an additional $1.6 million in revenue for the quarter that had ended on March 31, 2005. Id. ¶¶ 67-74.

On May 16, 2008, pursuant to a Consent to Judgment, Judge Martinez entered a Final Judgment as to Lynch, which he amended on May 20, 2008. Exh. D. In the amended judgment against Lynch, Judge Martinez held that Lynch shall pay a civil penalty, the amount of which the Court would determine upon motion of the Commission and that the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of depositions or testimony, and documents without regard to the standards for summary judgment. Id. at 5. The judgment also provided that the parties were entitled to take discovery in connection with the Commission's motion for disgorgement and/or penalties. Id. at 5-6.

On November 12, 2008, the Court ordered that S.E.C. v. Monterosso, et al. and S.E.C. v. GlobeTel, et al., be consolidated, both for pretrial procedures and for trial. Dkt. No. 62.

On February 4, 2009, the Commission filed a motion to amend its complaint against GlobeTel and Jimenez to add claims based upon a 2002-04 fraudulent scheme ("First Amended Complaint"). Dkt. Nos. 81, 82. The proposed amended complaint did not include any additional claims against Monterosso and did not change, in any way, the original allegations in the November 2007 complaint. On March 23, 2009, the Court granted the Commission's motion to amend and the First Amended Complaint was deemed filed. Dkt. Nos. 118, 119.

On February 11, 2009, Lynch appeared for a deposition and was represented by counsel. Exh. E at 8:3-24. However, during his deposition, Lynch invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions other than those asking his name, his address and if he was represented by counsel. Id. at 9:1-

11:25. Lynch refused to answer questions about: his present employment, id. 11:25-12:1; his relationship with the other defendants, id. at 12:9-13:11; the nature of his responsibilities at GlobeTel, including his responsibilities as COO and, subsequently, as CFO, id. at 14:9-17:1; the nature of his role in preparing Forms 10-Q filed by GlobeTel with the Commission; id. at 17:2-12; whether he signed any of GlobeTel's public filings with the Commission, id. 17:13-21; and his responsibilities with respect to GlobeTel's subsidiaries. Id. at 17:25-25:7. Lynch also asserted his Fifth Amendment privilege against self-incrimination in response to questions about whether he ever requested additional revenue for GlobeTel from Monterosso or Vargas, including a request after the end of a fiscal quarter, for approximately $1.6 million in additional revenue for the quarter that had already ended. Id. 44:18-48:19.

## ARGUMENT

### I. Standard For Applying Adverse Inferences Against Third Parties

A court may draw an inference against a party where a third-party witness invoked the Fifth Amendment when the "adverse inference is trustworthy under all the circumstances and will advance the search for the truth." LiButti v. U.S., 107 F.3d 110, 124 (2d Cir. 1997); Bernal v. All American Investment Realty, 479 F. Supp.2d 1291, 1337 (S.D. Fla. 2007); Cole v. American Capital Partners Ltd., 2008 WL 2986444 (S.D. Fla. Aug. 4, 2008); New Hampshire Ins. Co. v. Blue Water Off Shore, LLC, 2009 WL 792530, at *8-10 (S.D. Ala. Mar. 23, 2009). Courts have held that a non-party's silence implicates the Fifth Amendment concerns even less than a party's silence. See FDIC v. Fidelity & Deposit Co. of Md., 45 F.3d 969, 977 (5th Cir. 1995); Rad Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271, 275 (3d Cir. 1986).

4

Specifically, where the evidence is relevant and not otherwise prohibited by the rules, courts have admitted evidence that former employees of a corporate party refused to answer questions based on the Fifth Amendment. See, e.g., LiButti, 107 F.3d at 121; Fidelity & Deposit Co. of Md., 45 F.3d at 977-79; Brink's Inc. v. City of New York, 717 F.2d 700, 710 (2d Cir. 1983); Rad Servs., 808 F.2d at 278-79; United States v. Custer Battles, LLC, 415 F. Supp.2d 628, 635-36 (E.D. Va. 2006); John Paul Mitchell Sys. v. Quality King Dist., Inc., 106 F. Supp.2d 462, 471 (S.D.N.Y. 2000); New Hampshire Ins. Co., 2009 WL 792530, at *8-10. An "ex-employees' refusals to testify could appropriately be conceptualized 'as vicarious admissions of their former employer.'" LiButti, 107 F.3d at 121 (quoting Brink's Inc., 717 F.2d at 710); see also Custer Battles, 415 F. Supp.2d at 635-36 (holding "no logical reason" why an adverse inference may not be drawn against corporation as a result of ex-employee's refusal to testify); U.S. v. District Council, 832 F. Supp. 644, 651-52 (S.D.N.Y. 1993) (holding that it is legal to admit evidence even where "invokers of the privilege may not presently be employees or agents of the [defendant]," and reserving final decision on admissibility for trial). Further, "the circumstances of a given case, rather than 'a bright-line rule for use in all civil cases,' should govern the admissibility of adverse inferences." LiButti, 107 F.3d at 122; see Brink's Inc., 717 F.2d at 710.

Four factors should inform the Court's analysis of whether to draw an adverse inference against a witness's former employer: (1) the nature of the relevant relationships; (2) the degree of control of the party over the witness; (3) the compatibility of interests of the party and witness in the outcome of the litigation; and (4) the role of the witness in the litigation. See LiButti, 107 F.3d at 123-24; see also, e.g., John Paul Mitchell Sys., 106 F.

Supp.2d at 471 (applying LiButti.) "[T]he overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for truth." LiButti, 107 F.3d at 124. In New Hampshire Ins., the Court applied the LiButti factors and drew an adverse inference against a company where its former employee had declined to answer whether he was drunk while at the helm of a yacht at the time of an accident. New Hampshire Ins., 2009 WL 792530, at *8-10. That court observed the witness had no reason to falsely claim the Fifth Amendment to hurt the company, had been controlled by the company at the time of the accident at issue, had an interest in the litigation because the company might sue him if it failed to recover from its insurance company, and was central to the accident. See id. at *8-10.

Adverse inferences support summary judgment where the plaintiff has provided independent evidence to support the findings of fact. See FTC v. Transnet Wireless Corp., 506 F. Supp.2d 1247, 1252 n.4 (S.D. Fla. 2007); FTC v. Global Marketing Group, Inc., 594 F. Supp.2d 1281, 1287-89 (M.D. Fla. 2008); American Capital, 2008 WL 2986444, *6 (applying adverse inference from officers assertion of Fifth Amendment privilege against corporate defendants in award of summary judgment); SEC v. Asset Recovery & Management Trust SA, 2008 WL 4831738, at *8 (M.D. Ala. Nov. 3, 2008).

Adverse inferences are appropriate in the context of an SEC motion for summary judgment because the SEC must carry its burden of proving fraud and silence alone will not give rise to automatic liability. See SEC v. Rehtorik, 755 F. Supp. 1018, 1019-20 (S.D. Fla. 1990); accord Hoover v. Knight, 678 F.2d 578, 582 (5th Cir. Unit B 1982) (affirming judgment where there was direct evidence that confirmed misbehaviour and silence was only one of a number of factors considered by hearing officer); SEC v.

6

Scherm, 854 F. Supp. 900, 904-05 (N.D. Ga. 1993); SEC v. Suman, – F. Supp.2d –, 2010 WL 532060, *6 (S.D.N.Y. Feb. 11, 2010); SEC v. Lauer, 2008 WL 4372896, at *23 (S.D. Fla. Sept. 24, 2008) (granting summary judgment, applying inference against corporation);. These inferences are common in SEC actions. See, e.g., SEC v. Colello, 139 F.3d 674, 677-78 (9th Cir. 1998) (affirming summary judgment, collecting cases); Asset Recovery & Management Trust SA, 2008 WL 4831738, at *8 (M.D. Ala. Nov. 3, 2008) (collecting cases); SEC v. Cross Fin. Serv., Inc., 908 F. Supp. 718, 721 n.3 (C.D. Cal. 1995).

## II. The Court Should Draw Adverse Inferences Against GlobeTel Based Upon Lynch's Refusal To Testify

The Court should draw inferences against GlobeTel based upon Lynch's assertion of his Fifth Amendment privilege with respect to the specific questions identified in the Commission's motion. The claims against GlobeTel are based upon the actions of its agents and employees, including Lynch. As COO and subsequently CFO, the actions and intent of Lynch are imputed to GlobeTel. Beck v. Deloitte & Touche, 144 F.3d 732, 736 (11th Cir. 1998); In re Spear & Jackson Securities Litigation, 399 F. Supp.2d 1350, 1361 (S.D. Fla. 2005); Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 100-01 (2d Cir. 2001); Cheney v. Cyberguard, 2000 WL 1140306, *7 (S.D. Fla., July 31, 2000). Consideration of the factors identified in LiButti factors leads to the conclusion that drawing an adverse inference against GlobeTel from Lynch's refusal to testify is trustworthy under all of the circumstances and will advance the search for the truth.

### A. Nature Of The Relationship Between Lynch and GlobeTel

Lynch was an officer of GlobeTel until March 2006 and is a defendant in this

7

litigation. Indeed, the factual basis for the Commission's claims that Lynch violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, if proven, also establishes that GlobeTel violated those same anti-fraud provisions because a corporation "can only act through its officers and agents." Cora Pub, Inc. v. Continental Cas. Co., 619 F.2d 482, 486 (5th Cir. 1980); Pinder v. Bahamasair Holdings, Ltd., 661 F. Supp.2d 1348, 1352 (S.D. Fla. 2009). Therefore, Lynch's invocation of his Fifth Amendment privilege is as detrimental to him as it is to the company and there is no reason to believe that Lynch falsely asserted his Fifth Amendment privilege merely to incriminate GlobeTel.

> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation.

Rad Servs., 808 F.2d at 276. Further, Lynch refused to answer any questions concerning his present employment and his relationship with any of the other individual defendants in this case. Lynch's "apparent desire to guard against perjury or prosecution" should not serve the further purpose of precluding the SEC from obtaining judgment against GlobeTel. LiButti, 107 F.3d at 124. Like the witness in New Hampshire Ins., Lynch invoked his constitutional privilege against self-incrimination based upon the advice of counsel. See New Hampshire Ins., 2009 WL 792530, at *8.

### B. The Degree of GlobeTel's Control Over Lynch

The inquiry with respect to this factor is not whether GlobeTel exercised control over Lynch at the time of his deposition. Rather, the issue is "[t]he degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation . . . ." LiButti, 107 F.3d at 123; accord New Hampshire

8

Ins., 2009 WL 792580 at *8.

Lynch was an officer of GlobeTel during 2005 and 2006 when it is alleged the "off-net" fraudulent scheme occurred. Moreover, as COO and then CFO of GlobeTel, Lynch oversaw the operations of Centerline and its subsidiaries which generated the fraudulent "off-net" revenue and he was responsible for GlobeTel's accounting for the purported "off-net" transactions. Thus, GlobeTel exercised direct control over Lynch during the time period of the alleged fraudulent acts and had vested Lynch with direct responsibility for the transactions that give rise to the allegations against both GlobeTel and Lynch.

### C.  The Compatibility Of The Interests Of GlobeTel And Lynch

The interests of GlobeTel and Lynch with respect to the fraud claims in this case are directly aligned. As demonstrated above, evidence that Lynch engaged in violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act also serves as evidence that GlobeTel violated those same anti-fraud provisions. See American Capital, 2008 WL 2986444 at *5 (adverse inference against individual defendants may also be drawn against corporate defendant); New Hampshire Ins., 2009 WL 792530, at *8 (S.D. Ala. Mar. 23, 2009); John Paul Mitchell Sys., 106 F. Supp.2d at 471.

Moreover, Lynch's settlement with the Commission does not change the fact that his interests are directly aligned with those of GlobeTel. Although Lynch has entered a settlement agreement with the Commission, the issue whether Lynch should pay a civil penalty for his involvement in securities fraud and the amount of any such penalty still remains to be determined by the Court. The extent of Lynch's involvement in the fraudulent scheme and, therefore, the extent of his culpability would undoubtedly be

9

relevant to that inquiry. For example, the complaint alleges that Lynch violated Section 10(b) of the Exchange Act "knowingly or recklessly . . . ." Dkt. No. 63 at ¶176. It is the Commission's position that the evidence establishes Lynch engaged in the fraud knowingly and will present evidence to support that conclusion. Therefore, to the extent Lynch's invocation of his Fifth Amendment privilege in responses to questions on this issue during his deposition, the Court should be able to consider that fact in determining his level of involvement in the fraudulent scheme and the amount of civil penalty he should be required to pay.

One clear example of a fact that is not included in the complaint, but which is relevant to the determination of Lynch's culpability as well as GlobeTel's liability is Lynch's role in the creation of $1.6 million of fictitious revenue after the end of the first quarter of 2005. The complaint states a "GlobeTel executive asked Monterosso whether he could provide an additional $1.6 million worth of revenue for GlobeTel's first quarter," but does not identify the executive. Dkt. No. 63 at ¶ 70. The Commission intends to produce evidence the "GlobeTel executive" who requested the $1.6 million in additional revenue was Lynch. Further, to the extent the Commission is able to prove Lynch, acting in his capacity as COO of GlobeTel requested additional revenue from Monterosso and CSI after the end of a quarter, it also would prove that GlobeTel engaged in fraud. However, during his deposition, Lynch asserted his Fifth Amendment privilege with respect to the questions asked of him concerning this issue. Exh. E at 45:3-48:19. Thus, the interests of Lynch and GlobeTel with respect to his role in the "off-net" fraudulent revenue scheme are inextricably related.

### D. Lynch's Role In The Litigation

As demonstrated above, Lynch is a defendant in this case and played a key role in the events and actions which form the basis of the Commission's allegations against him and GlobeTel. He is a central figure in this litigation and factual findings concerning his actions and intent are directly relevant to the determination of GlobeTel's liability for violation of the anti-fraud provisions of the securities law.

The Commission has limited the questions for which it seeks an adverse inference against GlobeTel to those which are directly related to its liability based upon Lynch's actions. Therefore, the drawing of an adverse inference against GlobeTel from Lynch's assertion of his Fifth Amendment privilege is probative, but not unfairly prejudicial. As the Fifth Circuit noted, a jury may place real importance on evidence that witnesses refused to answer questions, but Federal Rule of Evidence 403 does not exclude evidence just because it may be powerful:

> Although courts should vigilantly guard against unfair prejudice in this context, the qualifier "unfair" is not superfluous. "Prejudice" to one party is the natural and intended consequence of the admission of evidence by another. In order to be excluded under Rule 403, the asserted prejudice from a witness's invocation must be more than the fact that the evidence is adverse to the opposing party. In other words, "prejudice" does not necessarily mean "unfair prejudice."

Hinojosa v. Butler, 547 F.3d 285, 295 (5th Cir. 2008) (internal citations and punctuation omitted) (ordering new trial where court excluded evidence of defendant refusing to answer questions); see Brink's Inc., 717 F.2d at 710 (admission that is prejudicial because it is "damning" is not prejudicial in the sense of being "inflammatory"); Custer Battles, 415 F. Supp.2d at 635-36 (no unfair prejudice in drawing adverse inference against

11

defendant from assertion of Fifth Amendment privilege of former employee who was fired).

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Commission's motion in its entirely and draw adverse inferences against GlobeTel with respect to the questions asked of Lynch during his deposition that are identified in the Commission's motion.

April 19, 2010                                        Respectfully submitted,

                                                      s/Jeffery T. Infelise
Of Counsel:                                           Jeffery T. Infelise (DC 546998)
Cheryl J. Scarboro                                    Special Florida Bar No. A5501154
                                                      infelisej@sec.gov

                                                      Reid A. Muoio
                                                      Special Florida Bar No. A5501160
                                                      muoior@sec.gov

                                                      Brent Mitchell
                                                      Special Florida Bar No. A5501159
                                                      mitchellb@sec.gov

                                                      100 F Street NE
                                                      Washington, D.C. 20549
                                                      (tel) (202) 551-4904 (Infelise)
                                                      (fax) (202) 772-9362 (Infelise)


## CERTIFICATE OF SERVICE

I hereby certify that, on April 19, 2010, I electronically filed the foregoing Plaintiff's Memorandum In Support Of Motion *In Limine* For Adverse Inferences Against GlobeTel Communications Corp. with the Clerk of the court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                      s/Jeffery T. Infelise
                                                      Jeffery T. Infelise

## SERVICE LIST

**ELECTRONIC SERVICE**

Maranda E. Fritz, Esq.
Mfritz@hinshawlaw.com
Hinshaw & Culbertson LLP
780 Third Ave., 4th Floor
New York, New York 10017-2024
Tel. No. 212-471-6200
Fax No. 212-935-1166
*Counsel for GlobeTel Communications Corp.*

Walter J. Mathews & D. Patricia Wallace
Fla. Bar Nos. 0174319 & 0185930
wjmathews or pwallace@wjmlawfirm.com
Walter J. Mathews, P.A.
Courthouse Law Plaza
700 SE Third Avenue, Suite 300
Fort Lauderdale, Florida 33316
Tel:    (954) 463-1929 Fax: -1920
*Counsel for Luis E. Vargas*

Marc Rowin, Esq
Lynch Rowin LLP
630 Third Avenue
New York, New York 10017
Tel. No. 212-682-4001
Fax No. 212-682-4003
*Counsel for Lawrence Lynch*

Christopher Bruno, Esq.
c.bruno6@verizon.net
Bruno &Degenhardt
10615 Judicial Dr., Suite 703
Fairfax, VA 22030
Tel. No. 703-352-8960
Fax No. 703-352-8930
*Counsel for Thomas Y. Jimenez*

Mark David Hunter
Fla. Bar No. 12995
mdhunter@lhttlaw.com
Leser Hunter Taubman &
Taubman, PLLC
255 University Drive
Coral Gables, Florida 33134
Tel: 305-604-5547
*Counsel for Joseph J. Monterosso*

Jeffrey E. Marcus
Kenny Nachwalter, P.A.
1100 Miami Center
201 South Biscayne Blvd.
Miami, Fla. 33131
Tel. No. 305-474-1000
*Counsel for Timothy Huff*