# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61693-CIV-LENARD/GARBER

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

JOSEPH J. MONTEROSSO, et al.,

    Defendants.

_____/

## OMNIBUS ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE FOR ADVERSE INFERENCES

THIS CAUSE is before the Court on Plaintiff Securities and Exchange Commission's

("Commision") motions in limine for adverse inferences against Defendants Luis E. Vargas

("Vargas"), Lawrence Lynch ("Lynch"), and GlobeTel Communications Corp. ("GlobeTel").

On February 26, 2010, the Commission filed its Motion in Limine for Adverse Inferences

Against Luis E. Vargas and to Strike Affirmative Defenses (D.E. 255).[1]  The same day, the

Commission filed its Motion in Limine for Adverse Inferences Against Lawrence Lynch

(D.E. 257).[2]  On April 19, 2010, the Commission filed its Motion in Limine for Adverse

---

[1]    On March 15, 2010, Vargas separately filed his response to the Commission's Motion for
Adverse Inferences (D.E. 267) and his response to the Commission's Motion to Strike Affirmative
Defenses (D.E. 268). The Commission filed its reply on March 24, 2010.  (See D.E. 281.)

[2]    On March 10, 2010, Lynch filed his response in opposition, to which the Commission filed
its reply on March 22, 2010.  (See D.E. 266, 277.)

Inferences Against GlobeTel Communications Corp. (D.E. 309).[3]  Having considered the various motions, related pleadings, and the record, the Court finds as follows.

### I.    Background

On November 21, 2007, the Commission filed its initial complaint in this action.  (See D.E. 1.)  In sum, the Commission alleged therein that, from about July 2004 through September 2006, Joseph Monterosso ("Monterosso") and Vargas engaged in a fraudulent scheme to generate fictitious revenue for GlobeTel by creating false invoices that reflected transactions that never occurred between various telecommunication companies and three of GlobeTel's wholly-owned subsidiaries.    (Id. ¶ 1.)  The scheme entailed creating false invoices that made it appear as though GlobeTel's subsidiaries Centerline Communications, LLC ("Centerline"), Volta Communications, LLC ("Volta"), and Lonestar Communications, LLC ("Lonestar"), were engaged in the buying and selling of telecommunications "minutes" with other wholesale telecommunications companies.  The scheme generated approximately $119 million in non-existent "off-net" revenue.[4]  As a result of this alleged scheme, GlobeTel issued periodic reports, required registration statements, and press releases that, according to the Commission, misled investors because they materially overstated GlobeTel's financial results for at least the period from the third quarter of 2004 through the second quarter of

---

[3]    On May 6, 2010, GlobeTel filed its response in opposition, to which the Commission filed its reply on May 17, 2010. (See D.E. 350, 354.)

[4]    The term "off-net" refers to telecommunications traffic run on a "switch" owned or operated by others aside from GlobeTel, Volta, Lonestar, or Centerline.

2006.  (Id.)

On May 2, 2008, the Commission filed a complaint against Timothy Huff ("Huff"), Thomas Jimenez ("Jimenez"), GlobeTel, and Lynch in Case No. 08-60647.  (See D.E. 63.) That case was subsequently consolidated with the original action against Monterosso and Vargas.  The May 2008 complaint repeated the allegations concerning the 2004-2006 scheme to generate fictitious revenue and alleges the roles of Jimenez and Lynch in that fraud.

On March 23, 2009, the Commission filed an amended complaint setting forth additional allegations with respect to GlobeTel and Jimenez.  (See D.E. 119.)  Based upon recently discovered evidence, the Commission added allegations that from about May 2002, to about October 2004, GlobeTel and Jimenez engaged in a separate fraud involving the creation of millions of dollars in fake invoices reflecting non-existent transactions between GlobeTel and telecommunications companies in Mexico, Brazil, and the Philippines.  Both the 2002-2004 and 2004-2006 schemes additionally involved the creation of false call detail records ("CDRs"), documents recording the date, length, origin, and destination of the telephone calls supporting these transactions.

On June 5, 2009, the Commission filed its Second Amended Combined Complaint ("Complaint," D.E. 142-1), which is the operative complaint in this matter.  The 123 page Complaint consolidates its claims against Monterosso, Vargas, GlobeTel, Jimenez, and Lynch with regard to the 2002-2004 and 2004-2006 schemes.  The Complaint alleges the following violations: (1) violations of Section 17(a) of the Securities Act ("Section 17(a)"),

which prohibits fraud in the offer or sale of securities (against Monterosso, Vargas, Jimenez, Lynch, and GlobeTel); (2) violations of Section 10(b) of the Securities Exchange Act ("Section 10(b)") and Rule 10b-5, which prohibit fraudulent acts and material misstatements or omissions in connection with the purchase or sale of any security  (against Monterosso, Vargas, Jimenez, Lynch, and GlobeTel); (3) aiding or abetting violations of Section 10(b) and Rule 10b-5 (against Monterosso, Vargas, Jimenez, and Lynch); (4) direct and aiding or abetting violations of Section 13(a) of the Securities Exchange Act and Rules 12b-20, 13a-1, and 13a-13, which in part prohibit filing reports with the SEC that contain false statements of material fact, and failing to correct misleading or omitted information (against Monterosso, Vargas, Jimenez, Lynch, and GlobeTel); (5) direct and aiding or abetting violations of Section 13(b)(2)(A) of the Securities Exchange Act, which in part requires every issuer to make and keep records which in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the issuer (against Monterosso, Vargas, Jimenez, Lynch, and GlobeTel); (6) violations of Securities Exchange Act Rule 13b2-1, which prohibits any person from falsifying or causing to be falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act, and violations of Rule 13b2-2, which in part prohibits a director or officer from making or causing to be made a materially false or misleading statement or omission to an accountant in connection with documents or reports required to be filed with the Commission (against Monterosso, Vargas, Jimenez, and Lynch); (7) violations of Sections 5(a) and 5(c) of the Securities Act,

prohibiting the sale of securities when no registration statement is in effect (against GlobeTel); (8) direct and aiding and abetting violations of Section 13(b)(2)(B) of the Exchange Act, which prohibits failing to devise and maintain a system of internal accounting controls (against Jimenez, Lynch, and GlobeTel); and (9) direct violations of Exchange Act Rule 13a-14, which prohibits false certifications (against Jimenez and Lynch).   The Commission seeks various types of injunctive and equitable relief, as well as disgorgement and civil monetary penalties.[5]

## II.   Motions

### A.   Motions for Adverse Inferences

#### 1.   Luis E. Vargas

The Commission requests the Court permit adverse inferences to be drawn from Vargas's invocation of his Fifth Amendment privilege against self-incrimination during his deposition.  More specifically, the Commission requests adverse inferences be drawn as to all of the questions asked during his deposition (except those regarding name and address) for purposes of summary judgment and a jury instruction at trial.

Vargas opposes the imposition of adverse inferences.  First, Vargas believes the

---

[5]      On September 8, 2009, the Commission filed an additional complaint against Huff, who had previously settled the Commission's initial allegations.  That case was consolidated with this action on September 21, 2009.  Huff consented to judgment and on September 7, 2010, the Court entered judgment against Huff, with only issues of disgorgement, pre-judgment interest, and civil penalties left for disposition.  (See D.E. 427)  On March 19, 2010, the Court similarly entered judgment as to Jimenez.  (See D.E. 274)  In addition, prior to consolidation, Lynch entered into a settlement agreement with the Commission and judgment was entered against him.  (See D.E. 249)

sanction of adverse inferences is unwarranted where the Commission has not shown it will be prejudiced by his invocation of the Fifth Amendment privilege against self-incrimination. Specifically, Vargas claims that on January 18, 2007, he gave a full day of testimony before the Commission. Prior to this testimony, the Commission had already received documents and taken testimony from thirteen other witnesses. On June 6, 2007, after the Commission had received even more documents and witness testimony, Vargas provided them with another day of investigative testimony. Vargas did not assert his Fifth Amendment privilege during either day of testimony. On November 21, 2007, the Commission filed its initial complaint against Vargas and Monterosso. On May 2, 2008, Vargas claims he produced 366,783 pages of documents in electronic format, in addition to those documents produced during the investigative process, to the Commission. On May 8, 2008, the Department of Justice sent a "target letter" to Vargas informing him he was a target of its investigation into potential violations of federal criminal laws. On June 13, 2008, Vargas states that he produced all of the contracts he kept in paper format as well as 25,693 pages of e-mails related to Centerline. On November 12, 2008, the Commission deposed Vargas. In response to every question with the exception of those regarding his name and address, Vargas invoked his Fifth Amendment privilege against self-incrimination. Vargas argues he should not be sanctioned with adverse inferences where he has participated in discovery and provided so much information to the Commission. Specifically, Vargas highlights a comparison of Vargas's testimony as part of the investigative process to those questions

-6-

asked of him at his deposition.  Vargas believes the comparison reveals that not only did the Commission receive the information it says it needs but that the Commission disingenuously used Vargas's prior testimony as a "roadmap" for his deposition.

Second, Vargas believes the probative value of any adverse inferences drawn is outweighed by substantial prejudice and thus the evidence should be excluded pursuant to Rule 403 of the Federal Rules of Evidence.  Vargas contends that an instruction to the jury that it may draw adverse inferences from his refusal to answer questions at his deposition would be unfairly prejudicial and confusing.  Vargas argues the Court would necessarily have to instruct the jury that he answered every question the Commission asked him during two days of sworn testimony and that he only invoked his privilege after the Commission brought this action against him.  Alternatively, Vargas argues the Commission should have to specifically identify the exact adverse inferences it seeks to have drawn and allow Vargas the opportunity to rebut such inferences with other admissible evidence.

Third, Vargas contends the standard for summary judgment under Rule 56 of the Federal Rules of Civil Procedure does not permit the drawing of adverse inferences against him.  According to Vargas, the Court cannot draw adverse inferences resulting in automatic entry of summary judgment and it must still resolve all doubts or ambiguities in his favor.

Finally, Vargas argues the Commission's request is too vague.  Pointing to the deposition transcript's length, Vargas argues the Commission is asking that he and the Court guess what facts or inferences should be established.  Thus, the Court should either deny the

Commission's request outright or direct the Commission to clearly catalogue each of the statements it seeks to be established as fact.

In reply, the Commission argues that investigation testimony is no substitute for deposition testimony because of their different purpose and timing. According to the Commission, attaching preclusive effect to the its investigations would transform the investigatory process into an adversarial process. Thus, the Commission argues it will suffer prejudice based upon Vargas's lack of deposition testimony. The Commission also argues inferences are not prejudicial under Rule 403 and any prejudice could be cured by a limiting instruction. As a result, the Commission requests the Court draw adverse inferences from Vargas's silence at his deposition in ruling upon summary judgment and the jury be permitted to do the same at trial.

### 2.    Lawrence Lynch

As with Vargas, the Commission requests the Court permit adverse inferences to be drawn from Lynch's invocation of his Fifth Amendment privilege against self-incrimination during his deposition. More specifically, the Commission requests adverse inferences be drawn as to all of the questions asked during his deposition (with the exception of the only questions answered regarding his name and address) for purposes of the Court's imposition of civil penalties. The Commission asserts that Lynch refused to answer questions regarding the nature of his responsibilities at GlobeTel, any role in preparing the filings submitted to the Commission, his responsibilities with respect to GlobeTel's subsidiaries, and whether or

not he ever requested $1.6 million in additional revenue from Monterosso or Vargas after the end of the first quarter of 2005.

Lynch opposes the imposition of adverse inferences in the Court's determination of the amount of civil penalties he must pay. As does Vargas, Lynch argues the Commission is not entitled to adverse inferences where it cannot demonstrate any prejudice as a result of his invocation of his Fifth Amendment privilege. In approximately September 2006, the Commission served Lynch with subpoenas to testify and produce documents. Lynch produced documents and testified in November 16, 2006, in response to the subpoenas. He also later voluntarily supplied the Commission with approximately 3,230 pages of e-mails upon an informal request. On March 14, 2007, Lynch again testified before the Commission. He did not invoke his Fifth Amendment privilege at either session. On February 8, 2008, Lynch entered into a settlement agreement with the Commission in which he consented to the entry of judgment against him. The consent judgment enjoined Lynch from committing any further violation of the securities laws and imposed a five-year bar on serving as an officer or director of a publicly-traded corporation. The consent judgment left the amount of civil penalty for the Court's determination. It also provided that the allegations contained in the complaint would be deemed true for purposes of determining the amount of that civil penalty. In June 2008, federal authorities notified Lynch that he was a "person of interest" in an ongoing criminal investigation of GlobeTel. After a use immunity agreement was reached, authorities interviewed Lynch on July 15, 2008. On February 11, 2009, the

Commission deposed Lynch.  In response to every question with the exception of those regarding his name and address, he invoked his Fifth Amendment privilege against self-incrimination.

Lynch offers several reasons why the Commission will not suffer any prejudice and adverse inferences should not be drawn.  First, he asserts that contrary to the Commission's arguments, it is the Commission that bears the burden of proof regarding its motion for a civil penalty.  Thus, there is no need for him to support a claim or defense through deposition testimony.  Second, Lynch argues the drawing of adverse inferences is discretionary and not mandatory.  Third, Lynch argues the Commission's burden has "been lightened extensively" due to his consent to the entry of judgment and his agreement to deeming all of the allegations contained in the complaint as true.  Fourth, Lynch points to all of the pre-suit investigative information he provided, as well as all of the other information provided by other witnesses, as proof that his invocation of the privilege at his deposition was not prejudicial to the Commission.

In reply, the Commission sets forth much of the same arguments as it did for Vargas.  The Commission argues that investigation testimony is no substitute for deposition testimony because of their different purpose and timing and attaching preclusive effect to the Commission's investigations would transform the investigatory process into an adversarial process.  The Commission further argues that it is prejudiced because Lynch's testimony regarding the extent of his involvement would be relevant to the Court's determination of

-10-

how much of a civil penalty to impose.  According to the Commission, even though Lynch has consented to the truth of the facts alleged in the Complaint, it still does not preclude him from arguing he was minimally involved or only reckless.  As a result, the Commission requests the Court draw adverse inferences from Lynch's silence at his deposition in fashioning an appropriate civil penalty.

### 3.    GlobeTel Communications Corp.

The Commission also seeks the imposition of adverse inferences against GlobeTel for purposes of summary judgment and trial as a result of Lynch's invocation of his Fifth Amendment privilege at his deposition.  Specifically, the Commission asks the Court to draw adverse inferences as to a list of seventeen questions asked of Lynch at his deposition.  The Commission argues that adverse inferences may be drawn against a third-party former employer such as GlobeTel because of the nature of their relationship, the degree of control GlobeTel exercised over Lynch during the relevant time period, the alignment of their interests, and the fact that the inferences sought are probative and not prejudicial.  The Commission asserts that Lynch's actions, as GlobeTel's chief operating officer ("COO") and chief financial officer ("CFO"), are necessarily imputed to GlobeTel.  His position at the company also evidences their relationship and the extent of control asserted over him.  The Commission also argues that notwithstanding Lynch's settlement agreement, he has a strong interest in minimizing his involvement in order to limit the amount of his civil penalty.

GlobeTel sets forth several reasons why adverse inferences should not be imposed

-11-

against it as a result of Lynch's failure to testify.  GlobeTel argues that based upon the facts

of this case and the status of the law in this Circuit, adverse inferences should not be drawn

against it.  GlobeTel also argues that the actions and intent of Lynch should not be imputed

to it.  In examining the relationship between itself and Lynch, GlobeTel asserts there is no

continuing relationship between the two and Lynch's interests are decidedly more consistent

with the Commission's and not the company.  Pursuant to Lynch's settlement agreement, he

is precluded from testifying inconsistent with the allegations in the complaint.  GlobeTel

points to co-defendant's Timothy Huff's ("Huff") alleged treatment in which he originally

settled with the Commission, gave unfavorable testimony, and then was brought back into

the civil action and indicted in a parallel criminal investigation, as an indication of how

Lynch's interests are far more aligned with pleasing the Commission than with GlobeTel's

position. Rather, in comparison, there is no loyalty or relationship between GlobeTel and its

former employee.  GlobeTel also argues it has no control over Lynch or his decisions to enter

into a settlement agreement or invoke his privilege against self-incrimination.  Finally,

GlobeTel asserts that the adverse inferences sought to be drawn are either irrelevant, contrary

to the evidence, or unfairly prejudicial.  It is GlobeTel's concern that the Commission is not

actually seeking the imposition of inferences but the leeway to raise Lynch's invocation of

the Fifth Amendment.

### B.    Motion to Strike Affirmative Defenses

The  Commission  further  requests  the  Court  strike  Vargas's  eighth  and  ninth

affirmative defenses,[6] or alternatively, preclude Vargas from offering any evidence in support of these defenses.  The Commission bases its request upon Vargas's invocation of the privilege to questions regarding the factual bases for such defenses.  The Commission argues Vargas has refused to provide discovery regarding his affirmative defenses that he relied upon the advice of others and the violations were committed by unnamed persons, and is attempting to use the privilege as a "sword," rather than a "shield."  Thus, the Commission argues the defenses should be stricken or Vargas should be precluded from offering any evidence in support of them.

In response, Vargas argues his defenses should not be stricken because the Commission fails to satisfy the requirements of Rule 12(f) of the Federal Rules of Civil Procedure.  Vargas asserts the Commission has not identified anything that would make either of the challenged defenses invalid as a matter of law and the Commission would suffer no prejudice in allowing these defenses to be considered by the jury.  Vargas further argues that these defenses are supported by sources other than his own testimony, including Monterosso's testimony and documents produced in this litigation.

### III.    Discussion

---

[6]    On October 10, 2008, Vargas filed his original Answer & Affirmative Defenses.  (See D.E. 58.)  The eighth affirmative defense asserted by Vargas in this Answer, "was because Vargas, in good faith, reasonably relied upon the opinion of accountants and counsel that his actions were in full compliance with all laws and regulations."  The ninth affirmative defense asserted by Vargas in the Answer claims that the, "alleged violations were not committed by Vargas but rather by other persons not named in the Complaint."  Vargas has since filed his Answer & Affirmative Defenses to the Second Amended Combined Complaint ("Vargas's Answer," D.E. 300).  Vargas's Answer re-asserts these affirmative defenses as his seventh and eighth, respectively.

### 1.    Adverse Inferences

The Eleventh Circuit has held that "the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds." United States v. Two Parcels of Real Property Located in Russell County, Alabama, 92 F.3d 1123, 1129 (11th Cir. 1996); Arango v. United States Dept. of the Treasury, 115 F.3d 922, 926 (11th Cir. 1997) ("The Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination."). Rather, it is well-established that, "[f]orcing an individual to risk non-criminal disadvantage by remaining silent for fear of self incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional infringement." S.E.C. v. Incendy, 936 F. Supp. 952, 956 (S.D. Fla. 1996) (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). "The courts consistently have held that the Fifth Amendment privilege may be used only as a shield and not as a sword that frees claimant from adducing proof in support of his burden." United States v. One Parcel of Real Property Commonly Known as 901 N.E. Lakewood Drive, Newport, Oregon, 780 F. Supp. 715, 721 (D. Or. 1991). "Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection." S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994).

"However, a motion for summary judgment cannot be granted on an adverse inference alone; rather, the inference must be weighed with other evidence in the matter in determining whether genuine issues of fact exist." United States v. Suman, 2010 WL 532060 at *6

(S.D.N.Y. Feb. 11, 2010); see also, Lefkowitz v. Cunningham, 431 U.S. 801, 808 n.5 (1977); Pervis v. State Farm Fire and Casualty Co., 901 F.2d 944, 947 (11th Cir. 1990); Graystone Nash, 25 F.3d at 191; Incendy, 936 F. Supp. at 956 n.4; Federal Trade Comm'n v. Global Marketing Group, Inc., 594 F. Supp. 2d 1281, 1287 (M.D. Fla. 2008); S.E.C. v. Druffner, 517 F. Supp. 2d 502, 510 (D. Mass. 2007).  Where adverse inferences are drawn from invocation of the privilege, such inferences must not result in automatic summary judgment against the person invoking the privilege.  See  Pervis, 901 F.2d at 944; Incendy, 936 F. Supp. at 956 n.4.  In addition, "[a] trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment.  Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side."  Id. at 192; Suman, 2010 WL 532060 at *6 (court must balance the equities).  "Courts should 'give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties.'" S.E.C. v. Cavanaugh, 2004 WL 1594818 at *13 (S.D.N.Y. 2004) (quoting United States v. Certain Real Property and Premises Known As: 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 83 (2d Cir. 2003)).  Nevertheless, "[t]he principle that the invocation of the privilege may not be too 'costly' does not mean that it must be 'costless.'" Graystone Nash, 25 F.3d at 191.  As a result, district courts possess wide discretion in response to a party's invocation of the Fifth Amendment.  S.E.C. v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) (citing Wehling v.

-15-

Columbia Broadcasting Sys., 608 F.2d 1084, 1089 (5th Cir. 1979)[7]).

Additionally, all evidence must conform to the requirements of the Federal Rules of Evidence, including Rules 401 and 403. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Only relevant evidence is admissible under Rule 402. Finally, pursuant to Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Under the particular circumstances of this case, the Court finds the imposition of adverse inferences based upon Vargas's and Lynch's invocation of their Fifth Amendment privilege to be warranted. As an initial observation, the Court notes that courts routinely exercise their discretion to permit the drawing of adverse inferences where a party or non-party has invoked the privilege. Both Vargas and Lynch characterize their assistance with the Commission's investigation as extensive, but the differences in purpose and timing make investigatory testimony a poor substitute for deposition testimony. Neither defendant had yet been sued by the Commission when they gave their initial testimony. Once Vargas and

---

[7]      In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

Lynch became implicated in the civil action, the Commission's interest in discovering the Defendants' basis for their affirmative defenses and the extent of their knowledge or role in the alleged schemes took on new significance.  In response to the government's parallel criminal investigation of GlobeTel, Vargas and Lynch were well within their rights to invoke the Fifth Amendment.  Nonetheless, their invocation need not be costless, especially where the Commission will suffer a degree of prejudice.  Vargas and Lynch dispute the extent of the Commission's prejudice but there is no question that the Commission is in a substantially less favorable position in attempting to establish its claims against them.  With regard to Vargas, his deposition testimony as to his knowledge of the alleged schemes would have proven useful in the Commission's attempt to prove *scienter*.  Although Lynch has already consented to the allegations in the Complaint, his testimony as to his role or involvement with the alleged $1.6 million shortfall would have been proven useful for determining the amount of any disgorgement or civil penalty.  Their testimony would be particularly probative as to the issues yet to be determined in this case and for the most part cannot be obtained from other sources.  As stated above, any investigative testimony was taken in a different context and posture.  The Court additionally notes that to hold otherwise risks essentially elevating the Commission's investigative process into an adversarial proceeding.  Nevertheless, the Court notes that any adverse inferences drawn against Vargas or Lynch may not result in automatic summary judgment and any inference must be weighed with other evidence in the matter in determining whether genuine issues of fact exist.  Thus, any

adverse inferences drawn will not be drawn in a vacuum.

The imposition of adverse inferences in this case also conforms with Rule 403 of the Federal Rules of Evidence.  Vargas and Lynch's silence is probative.  See LiButti v. United States, 107 F.3d 110, 124 (2d Cir. 1997) ("As for the weight to be accorded to adverse inferences, the district court should be mindful of Justice Brandeis' classic admonition: 'Silence is often evidence of the most persuasive character.'").  The exact probative value and any risk of prejudice will have to be addressed on an inference-by-inference basis.  Any inferences drawn must also be relevant.  The Court will consider the extent to which any inferences are supported by other evidence in the record and are otherwise trustworthy under all of the circumstances.

The extent of any inferences drawn is necessarily fluid in light of the other evidence presented and may in reality prove quite limited as to the issues in this case.  Because the Commission vaguely seeks to draw adverse inferences from each of Vargas's and Lynch's unanswered questions at their deposition, the Court will address each inference sought as it comes up either in consideration of summary judgment or at trial.  In addition, the Court reserves ruling on whether any jury instruction based upon the imposition of adverse inferences would be appropriate.  The Court must now consider whether adverse inferences may be drawn against GlobeTel based upon Lynch's refusal to testify.

Adverse inferences drawn against the individual defendants may also be drawn against the corporate defendant because the individual defendants were acting in the scope of their

employment when they engaged in the conduct they refused to testify about. <u>Cole v. Am. Capital Partners Ltd.</u>, 2008 WL 2986444 at *5 (S.D. Fla. 2008).  The Second Circuit has delineated a number of non-exclusive factors to aid trial courts in determining whether adverse interests may be drawn against a party from the invocation of the Fifth Amendment privilege by a non-party.  <u>See</u> <u>LiButti</u>, 107 F.3d at 123.  These factors include: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation.  <u>Id.</u>  "An individual's status as a corporate officer gives rise to a presumption of ability to control and the degree of their participation in business is probative as to their knowledge."  <u>F.T.C. v. Transnet Wireless Corp.</u>, 506 F. Supp. 2d 1247, 1270 (S.D. Fla. 2007).  "Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth."  <u>LiButti</u>, 107 F.3d at 124.

The Court finds adverse inferences may be drawn against GlobeTel based upon Lynch's invocation of the Fifth Amendment privilege against self-incrimination.  Lynch served as both the COO and CFO during the relevant time period at GlobeTel. Based upon the nature of the positions he held and the conduct alleged in the Complaint, inferences drawn from his refusal to testify carry with them an element of trustworthiness given all of the circumstances.  The Commission alleges GlobeTel engaged in several schemes involving

accounting fraud and the preparation of false invoices.  Lynch's position as COO, and then CFO, certainly place him in a position where his testimony could be imputed to the corporation itself as to matters related to these areas.  Both Lynch and GlobeTel also share an interest in avoiding large civil penalties and minimizing their role in the alleged conduct with respect to the other actors.  Under the particular circumstances of this case, where an adverse inference is relevant and appropriate in light of other evidence in the record, such an inference may be permitted based upon Lynch's invocation of his Fifth Amendment privilege.

### B.    Affirmative Defenses

A motion to strike is governed by Rule 12(f), which provides in relevant part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  Striking allegations from a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice," and only when the allegations to be stricken have "no possible relation to the controversy."  Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962); Jackson v. Grupo Industrial Hostelero, S.A., 2008 WL 4648999 (S.D. Fla. 2008).

The Court finds that striking Vargas's affirmative defenses based upon the invocation of his Fifth Amendment privilege is unwarranted.  The Commission has not shown that such a drastic sanction is necessary.  It is not clear that Vargas's testimony could be the only source of evidence in support of either challenged defense.  In addition, as discussed above,

Vargas risks the imposition of adverse inferences based upon his invocation of his privilege. This is a far more appropriate vehicle for addressing the situation than striking Vargas's pleadings.  See One Parcel of Real Property Commonly Known as 901 N.E. Lakewood, 780 F. Supp. at 720.   Accordingly, consistent with this Order, it is **ORDERED AND ADJUDGED** that:

1.     The Commission's Motion in Limine for Adverse Inferences Against Luis E. Vargas and to Strike Affirmative Defenses (D.E. 255) is **GRANTED IN PART and DENIED IN PART**;

2.     The Commission's Motion in Limine for Adverse Inferences Against Lawrence Lynch (D.E. 257) and Motion in Limine for Adverse Inferences Against GlobeTel Communications Corp. (D.E. 309), are **GRANTED**.

   **DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of September, 2010.

                                                  _Joan A. Lenard_
                                                  **JOAN A. LENARD**
                                                  **UNITED STATES DISTRICT JUDGE**