UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61693-CV-LENARD/BANDSTRA

**SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

v.

**JOSEPH J. MONTEROSSO, et al.,**

    Defendants.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 535) AND GRANTING PLAINTIFF'S MOTIONS TO IMPOSE OFFICER-AND-DIRECTOR BARS, ORDER DISGORGEMENT PLUS PREJUDGMENT INTEREST, AND ASSESS CIVIL PENALTIES (D.E. 478, 496, 499, 506)**

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Ted E. Bandstra (D.E. 535), issued February 16, 2012.

Judge Bandstra recommends that the Court **(1)** grant the Securities and Exhange Commission's Motion to Reopen Case to Impose Permanent Officer and Director Bars Against Defendants Joseph J. Monterosso and Luis Vargas (D.E. 478, 5/20/11) and impose ten-year officer-and-director bars against both Monterosso and Vargas; **(2)** grant the SEC's Motion to Impose Disgorgement, Prejudgment Interest and a Penalty Against Monterosso and Vargas (D.E. 506, 8/17/11), order disgorgement as to Monterosso and Vargas in the total amount of $675,000 plus prejudgment interest, and assess penalties of $300,000 against Monterosso and $150,000 against Vargas; **(3)** grant the SEC's Motion

to Impose a Penalty, Disgorgement and Prejudgment Interest Against Defendant Timothy Huff (D.E. 499, 8/05/11), order disgorgement as to Huff in the amount of $1,500,000 plus prejudgment interest, and assess a penalty against Huff in the amount of $1,210,000; and **(4)** grant the SEC's Motion to Impose a Penalty Against Defendant Lawrence Lynch (D.E. 496, 8/04/11) and assess a penalty against Lynch in the amount of $780,000.

Defendants have filed Objections to Judge Bandstra's Report (see D.E. 542, 3/21/12; 543, 3/23/12; 544, 3/26/12; 545, 3/26/12), and the SEC has filed Responses to Defendants' Objections (see D.E. 548, 5/4/12; 549, 5/4/12; 552-1, 5/7/12; 552-2, 5/7/12). Having considered the Motions, Report, Objections, Responses, related pleadings, and the record, the Court finds as follows.

**I.   Background**

The underlying facts of this case are recited at length in this Court's Order Granting the SEC's Motion for Summary Judgment. See SEC v. Monterosso, 768 F. Supp. 2d 1244, 1248-56 (S.D. Fla. 2011). To summarize, Defendants orchestrated a fraudulent scheme to generate fictitious revenue for a telecommunications company formerly known as GlobeTel Communications Corp. Defendant Joseph Monterosso managed GlobeTel's wholesale telecommunications business. Defendant Luis Vargas ran another company, Carrier Services, Inc., that entered a joint venture agreement with GlobeTel. Defendant Timothy Huff was GlobeTel's chief executive officer, and Defendant Larry Lynch was GlobeTel's chief operating officer and later chief financial officer. Defendants' scheme involved creating false invoices that reflected transactions between the GlobeTel's subsidiaries and other companies. The operation resulted in the

issuance of financial reports, securities and registration statements, and press releases that misrepresented GlobeTel's financial condition to investors.

The SEC brought this action alleging **(1)** violations of Section 17(a) of the Securities Act, which prohibits fraud in the offer or sale of securities; **(2)** violations of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, which prohibit fraudulent acts and material misstatements or omissions in connection with the purchase or sale of any security; **(3)** aiding-or-abetting violations of Section 10(b) and Rule 10b-5; **(4)** aiding-or-abetting violations of Section 13(a) of the Securities Exchange Act and SEC Rules 12b-20, 13a-1, and 13a-13, which prohibit filing reports with the SEC that contain false statements of material fact; **(5)** aiding-or-abetting violations of Section 13(b)(2)(A) of the Securities Exchange Act, which requires issuers to keep records that accurately reflect the transactions and dispositions of the issuer's assets; and **(6)** violation of Securities Exchange Act Rule 13b2-1, which prohibits falsifying or causing to be falsified any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act, and violation of Rule 13b2-2, which prohibits a director or officer from making or causing to be made a materially false or misleading statement or omission to an accountant in connection with documents or reports required to be filed with the SEC.

Lynch and Huff settled with the SEC and consented to judgment, and this Court later granted summary judgment in favor of the SEC against Monterosso and Vargas. The Court also entered a permanent injunction against Monterosso and Vargas "[b]ased upon the egregiousness of Defendants' actions in falsifying documents in support of fake revenue, the degree of scienter exhibited, Defendants' continued shifting of blame, and

the increased likelihood that Defendants, who have continued to work in some fashion in the telecommunications industry, will commit future violations." Id. at 1270-71. The Court found disgorgement and civil penalties appropriate in amounts to be later determined.

The SEC subsequently moved to reopen the case to impose permanent officer-and-director bars on Monterosso and Vargas. The SEC also moved to impose disgorgement, prejudgment interest, and civil penalties against Monterosso, Vargas, and Huff, and to impose a civil penalty against Lynch.

The SEC's motions were referred to Magistrate Judge Bandstra. Judge Bandstra convened a hearing on the motions and recommended granting them as detailed above.

Defendants now raise objections.

## II. Standard of Review

Upon receipt of the Magistrate's Report and the Parties' Objections, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); accord FED. R. CIV. P. 72(b)(3). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In making its determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007).

### III. Discussion

#### a. Officer-and-Director Bars

##### i. Vargas

Vargas first objects to Judge Bandstra's recommendation that the Court impose a ten-year officer-and-director bar on him. Vargas argues specifically that (1) he is not a repeat offender and (2) there is no reasonable likelihood that his misconduct will recur.

Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), and Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), authorize courts to "prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 77q(a)(1) [or Section 10(b) of the Exchange Act] . . . from acting as an officer or director of an issuer of [registered securities] . . . if the person's conduct demonstrates unfitness to serve as an officer or director . . . ."

Factors relevant in assessing unfitness to serve as an officer or director include: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat-offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. See SEC v. Patel, 61 F.3d 137, 141 (2d Cir. 1995). This list is non-exhaustive, however, and district courts are afforded substantial discretion in deciding whether to impose officer-and-director bars. Id.

Here the Court finds Judge Bandstra's recommendation appropriate and Vargas's objections to be without merit. The Court has already found that Vargas had a significant and extensive role in GlobeTel's fictitious-revenue scheme; that the scope of the

5

overstatement of revenue was staggering; that Vargas acted with the requisite scienter; and that he has failed to acknowledge wrongdoing and accept responsibility. See Monterosso, 768 F. Supp. 2d at 1263-68, 1271. For these reasons, along with Vargas's continued association with the telecommunications industry, the Court found a reasonable likelihood that Vargas will engage in further violations if not enjoined. Id. at 1271. Even if Vargas is not a "repeat offender," the Court cannot say that that factor alone outweighs the remaining unfitness considerations. Cf. SEC v. Levine, 517 F. Supp. 2d 121, 146 (D.D.C. 2007) (imposing ten-year bar on first-time violators). On this basis the Court overrules Vargas's objections and adopts Judge Bandstra's recommendation that a ten-year bar be imposed.

### ii. Monterosso

Monterosso raises no independent objections to Judge Bandstra's recommendation that a ten-year bar be imposed on him.

The Court must conduct a de novo review only of "those portions of the Report or specified proposed findings or recommendations to which objection is made." City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 635 (S.D. Fla. 2010) (quoting 28 U.S.C. § 636(b)(1)).

As Monterosso raises no specific objections to Judge Bandstra's recommendations respecting officer-and-director bars, the Court finds any argument by Monterosso on this issue waived. Upon an independent review of the Report and record, the Court finds Judge Bandstra's recommendation of a ten-year bar on Monterosso appropriate.

### b. Disgorgement

#### i. Monterosso

Monterosso objects to Judge Bandstra's recommendation that he be held liable for $675,000 in disgorgement. He maintains that he profited by only $116,000 from the fraudulent scheme, so any disgorgement beyond that figure is inappropriate.

Disgorgement is a discretionary, equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. SEC v. Solow, 682 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010). The power to order disgorgement extends to the amount with interest by which the defendant profited from his wrongdoing. SEC v. Huff, 758 F. Supp. 2d 1288, 1358 (S.D. Fla. 2010).

In seeking disgorgement, the SEC bears the initial burden of producing a reasonable approximation of the defendant's ill-gotten gains. Id. "The SEC's burden for showing the amount of assets subject to disgorgement . . . is light." SEC v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005). "Exactitude is not a requirement; '[s]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty.'" SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004) (quoting SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998)). Once the SEC has produced a reasonable approximation of the defendant's unlawfully-acquired assets, the burden shifts to the defendant to demonstrate that the SEC's estimate is not reasonable. Id.

Here the Court finds Judge Bandstra's recommended disgorgement as to Monterosso amply supported by the record. Monterosso admitted in his deposition that

7

he received between $250,000 and $275,000 in cash compensation from GlobeTel for his work under the joint venture agreement with Carrier Services. Monterosso further testified that GlobeTel satisfied a $325,000 debt Monterosso owed to GlobeTel by withholding that sum from the proceeds Carrier Services was to receive under the agreement. Monterosso also admitted in his pleadings that as part of the agreement, GlobeTel allowed him to keep $100,000 owed to it by other companies. The Court thus finds that $675,000 represents not only a reasonable but a conservative approximation of Monterosso's unlawful profits from the fraud. While Monterosso argues that the number should be offset by various expenses he incurred in the course of his employ, the Court finds Monterosso's claims factually unsubstantiated. On this basis the Court adopts Judge Bandstra's recommendation.

### ii. Vargas

Vargas objects to Judge Bandstra's recommendation that he and Monterosso be held jointly and severally liability for the $675,000. Vargas argues that joint and several liability is unwarranted because only Monterosso retained the ill-gotten gains.

"It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." SEC v. Calvo, 378 F.3d 1211, 1215 (11th Cir. 2004) (citing SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3rd Cir. 1997); SEC v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998)). This holds true even where one defendant is more culpable than another. Id.

Here, as described in this Court's Summary Judgment Order and reiterated in Judge Bandstra's Report, Monterosso and Vargas clearly acted in concert to violate the securities laws and profit from their wrongdoing. The Court thus concludes that joint and several liability between both Monterosso and Vargas is appropriate.

### iii. Huff

Huff objects to Judge Bandstra's recommendation that he be held liable for $1.5 million in disgorgement, representing the sale price of stock options Huff received in 2002 and exercised in 2004 and 2005. Huff argues that the stock options were granted as earned-salary compensation for his bona fide services as GlobeTel's chief executive officer, not as a special bonus connected to the company's false filings. Huff thus argues that the stock options do not constitute unlawful gains subject to disgorgement. Huff also argues that any disgorgement ordered should be offset by restitution payments made in his parallel criminal proceedings.

Generally speaking, courts should distinguish between legally and illegally derived profits when benefits result from both lawful and unlawful conduct. See SEC v. Huff, 758 F. Supp. 2d 1288, 1359 (S.D. Fla. 2010) (citing CFTC v. British Am. Commodity Options Corp., 788 F.2d 92, 93-94 (2d Cir. 1986)).

Here the Court agrees with Judge Bandstra's recommended disgorgement of $1.5 million. As Judge Bandstra explains, the fraud that Huff concealed at least maintained the value of his shares until the stock options were later exercised. One can reasonably infer that, had investors known that GlobeTel was falsely reporting its revenue and profits, investment would have been withdrawn and Huff's stock would have become

9

substantially less valuable if not worthless. The Court thus concludes that $1.5 million represents a reasonable approximation of gain or benefit attributable to Huff's unlawful conduct. Huff responds by proffering expert testimony that GlobeTel's false filings did not drive up its stock price. But this means little, for it says nothing of what would have happened had the false filings never occurred or had the fraud been disclosed. In other words, just because GlobeTel's stock price did not "spike" in response to the false filings, that does not mean the false filings were not inflating or sustaining it. For these reasons the Court finds that Huff has failed to rebut the SEC's approximation of unlawful gains.

However, the SEC does concede that any disgorgement order should be offset by restitution payments that Huff has made in connection with his parallel criminal case. (See SEC Reply, D.E. 522 at 7 n.5.) The Court accordingly adopts Judge Bandstra's disgorgement recommendation subject to a reduction by any amounts in restitution already tendered.

### c. Prejudgment Interest

Vargas alone objects to Judge Bandstra's recommended award of prejudgment interest on the disgorged funds. Vargas argues that numerous delays in this litigation—occasioned in particular by the SEC's "serial amendments" to its complaint—make any award of prejudgment interest inappropriate.

Courts award prejudgment interest to prevent those found liable under the securities laws from enjoying any benefit accrued from the use of the ill-gotten gain. SEC v. Yun, 148 F. Supp. 2d 1287, 1293 (M.D. Fla.2001) (citing SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998)). "Requiring only that a losing defendant pay back the

principal amount of a wrongfully obtained sum permits him to retain the money's time value as a windfall in the form of an interest-free loan." William A. Graham Co. v. Haughey, 646 F.3d 138, 145 (3d Cir. 2011). Prejudgment-interest awards are compensatory, not punitive, and courts should make their interest decisions through "an assessment of the equities." Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1536 (11th Cir. 1987). District courts have wide discretion in determining whether and how much interest to assess. See SEC v. Carillo, 325 F.3d 1268, 1269 (11th Cir. 2003).

The time frame for calculating prejudgment interest usually begins with the date of the unlawful gain and ends at the entry of judgment, Yun, 148 F. Supp. 2d at 1293, though reductions may be appropriate where the prevailing party is responsible for delays in litigation, see Osterneck, 825 F.2d at 1536.

Here Judge Bandstra recommends assessing prejudgment interest starting from the date the SEC filed its Complaint, and the Court finds Judge Bandstra's recommendation to represent an equitable remedy given various delays that have attended this case. Contrary to Vargas's present urgings, the Court does not find that the delays in litigation should eliminate an award of prejudgment interest altogether. See, e.g., SEC v. Lauer, No. 09–15138, 2012 WL 1352930, at *6 (11th Cir. Apr. 19, 2012) ("While some of this litigation's duration may not be attributable solely to Lauer, the district court acted within its discretion in deciding that the equities called for disallowing Lauer from being unjustly enriched by collecting interest on his ill-gotten gains."). For these reasons Vargas's objections are overruled and Judge Bandstra's recommendation is adopted.

### d. Civil Penalties

Vargas, Monterosso, Huff, and Lynch next object to Judge Bandstra's recommendations on civil penalties.

Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), allow the SEC to seek monetary civil penalties for Securities Act and Exchange Act violations. Unlike disgorgement, which "merely restores a defendant to his original position without extracting a real penalty for his illegal behavior," SEC v. Sargent, 329 F.3d 34, 42 n.2 (1st Cir. 2003), civil penalties are intended to punish the individual wrongdoer and deter him and others from future securities law violations, SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 17 (D.D.C. 1998); SEC v. Friendly Power Co. LLC, 49 F. Supp. 2d 1363, 1373 (S.D. Fla. 1999).

The Securities Act and the Exchange Act set forth three tiers of civil penalties for specified degrees of culpability. The third tier applies to violations which (1) "involved fraud, deceit, manipulation or reckless disregard for a regulatory requirement" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). For violations occurring after February 2, 2001, but before February 14, 2005, a third-tier penalty may not exceed $120,000 for each violation or the gross amount of the defendant's pecuniary gain. 17 C.F.R. § 201.1002, Table II to Subpart E. For violations occurring after February 14, 2005, but before March 8, 2009, a third-tier penalty may not exceed $130,000 for each violation or the gross amount of the defendant's pecuniary gain. Id. § 201.1003, Table III to Subpart E.

12

Courts have considered the following factors when imposing civil penalties under the securities laws: (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition. SEC v. Huff, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010) (citing SEC v. Abellan, 674 F. Supp. 2d 1213, 1222 (W.D. Wash. 2009); SEC v. Lybrand, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003)). The amount of penalty to be imposed is left to the sound discretion of the court. See SEC v. Warren, 534 F.3d 1368, 1369 (11th Cir. 2008).

### i. Vargas

Vargas objects to Judge Bandstra's recommendation that a third-tier, $150,000 civil penalty be assessed against him. Vargas argues that he is unable to pay any money whatsoever, so any civil penalty should now be waived.

Here the Court finds Judge Bandstra's recommended civil penalty appropriate. Judge Bandstra factored Vargas's inability to pay into his penalty recommendation. Based on Vargas's inability to pay, Judge Bandstra reduced the SEC's requested—and otherwise justified—civil penalty of $390,000 to a recommended penalty of only $150,000. The Court finds this number to be substantiated and equitable, and the Court agrees with Judge Bandstra that based on the egregiousness of the violations in this case, Vargas's present financial condition should not bar a civil penalty altogether.

### ii. Monterosso

Monterosso objects to Judge Bandstra's recommendation that a third-tier, $300,000 civil penalty be assessed against him. Monterosso argues that the assessment is inappropriate because there has been no finding that his unlawful conduct created substantial losses or the risk of substantial losses to investors. Monterosso further claims that he cannot be held accountable for the misstatements made in this case, as he did not make them personally and no authority over those who did.

The Court finds Monterosso's objections to be without merit. First, this Court found no question on summary judgment that the revenue overstatements in this case were material—i.e., that Defendants' misrepresentations were "so obviously important to an investor" and "would have been been viewed by the reasonable shareholder as having significantly altered the 'total mix of information available.'" Monterosso, 768 F. Supp. 2d at 1263 (citations omitted). Judge Bandstra reiterated these findings, adding that "the fact that no investor losses can be directly linked to the fraudulent scheme does not negate the significant risk of loss to which these investors were exposed." (Report, D.E. 535 at 18.) Judge Bandstra accordingly found that Defendants' fraudulent conduct created a substantial risk of loss to GlobeTel investors. This Court agrees. As for Monterosso's claim that a civil penalty is unwarranted because no misstatements in this case can be attributed to him, the Court finds this argument waived for failure to raise it before the magistrate judge. See Guerra v. United States, --- F. Supp. 2d ---, 2011 WL 7789563, at *10 n.3 (S.D. Fla. Dec. 12, 2011) ("[Parties] must take before a magistrate 'not only their best shot but all of the shots' and cannot raise new issues for the first time

in objections to a Report."). The Court finally notes that Judge Bandstra's recommended penalty of $300,000 represents a sharp reduction of the SEC's requested—and again justified—civil penalty of $780,000. For all these reasons, the Court adopts Judge Bandstra's penalty recommendation as to Monterosso.

### iii. Huff

Huff objects to Judge Bandstra's recommendation that a third-tier, $1.21-million civil penalty be assessed against him. Huff argues that the other penalties imposed on him in this case, as well as a fifty-month prison sentence that he received in parallel criminal proceedings, obviate any need for additional monetary punishment. Huff further argues that former GlobeTel Chief Financial Officer Thomas Jimenez was penalized only $150,000 and was just as if not more culpable. Huff also claims that his inability to pay favors a lesser penalty than that recommended by Judge Bandstra.

Here the Court agrees with Judge Bandstra's recommendation. First, Judge Bandstra's recommended penalty is derived from only ten of Huff's most serious false disclosures and does not account for a minimum of ten other violations perpetrated by Huff in this case. Second, as Judge Bandstra noted, Huff's conduct was egregious, he acted with a high degree of scienter, his violations were numerous, and his activity created a substantial risk of loss to investors. While Jimenez may have received a lesser penalty for his involvement, it was Huff who came up with the idea to create fictitious revenue, determined how much fictitious revenue to create each quarter, and lied to GlobeTel auditors regarding the absence of records to substantiate the revenue. The Court further agrees with Judge Bandstra that Huff's punishment in concurrent criminal

proceedings does not eliminate the need for deterrent monetary sanctions in this case. Nor can the Court say that Huff's present financial condition offsets the foregoing considerations or otherwise warrants a penalty reduction. On this basis the Court adopts Judge Bandstra's recommended civil penalty.

### iv. Lynch

Lynch objects to Judge Bandstra's recommendation that a $780,000 penalty be assessed against him. Lynch argues that his inability to pay and his allegedly minimal, unwitting involvement in the fraud favor a lesser penalty. Lynch argues that Judge Bandstra improperly disregarded evidence offered on those factors. Lynch further argues that his recommended penalty is disproportionate to that of other Defendants. Lynch suggests that a penalty of $30,000 is more equitable.

Here the Court finds Judge Bandstra's recommended penalty of $780,000 appropriate and Lynch's objections to be without merit. First, Lynch's claim that his involvement in the subject fraud was minimal and unknowing is contradicted not only by the record but by his own consent to entry of judgment, which states that "the allegations of the Complaint shall be accepted as and deemed true by the Court." (D.E. 523-1 ¶ 4.) Second, the Court cannot say that the recommended penalty of $780,000 is somehow disproportionate to the penalties of Lynch's codefendants. The Court further notes that the recommended penalty is based on the issuance of only six fraudulent periodic reports and does not account for a myriad of other violations committed by Lynch in this case. And even assuming Lynch's financial condition is as weak as he alleges, the Court does

not find this consideration sufficiently compelling to reduce the $780,000 penalty recommended. For these reasons the Court adopts Judge Bandstra's recommendation.

It is accordingly **ORDERED AND ADJUDGED** that:

1. The Report and Recommendation of Magistrate Judge Ted E. Bandstra (D.E. 535), issued February 16, 2012, is **ADOPTED**.

2. Consistent with the Report and this Order, the SEC's Motion to Reopen Case to Impose Permanent Officer and Director Bars Against Defendants Joseph J. Monterosso and Luis Vargas (D.E. 478, 5/20/11) is **GRANTED** and ten-year officer-and-director bars are imposed against both Monterosso and Vargas;

3. The SEC's Motion to Impose Disgorgement, Prejudgment Interest and a Penalty Against Monterosso and Vargas (D.E. 506, 8/17/11) is **GRANTED**, disgorgement is ordered as to Monterosso and Vargas in the total sum of $675,000 plus prejudgment interest, and civil penalties are assessed in the amount of $300,000 against Monterosso and $150,000 against Vargas;

4. The SEC's Motion to Impose a Penalty, Disgorgement and Prejudgment Interest Against Defendant Timothy Huff (D.E. 499, 8/05/11) is **GRANTED**, disgorgement is ordered as to Huff in the amount of $1,500,000 plus prejudgment interest, but less any restitution payments already made by Huff in his parallel criminal matter, and a civil penalty is assessed against Huff in the amount of $1,210,000; and

5. The SEC's Motion to Impose a Penalty Against Lawrence Lynch (D.E. 496, 8/04/11) is **GRANTED**, and a civil penalty is assessed against Lynch in the amount of $780,000.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of October, 2012.

*/s/ Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**